# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF TENNESSEE
# KNOXVILLE

| | |
|---|---|
| **M & M STONE FARMS, LLC and** | ) |
| **TRI-COUNTY CRUSHED STONE, LLC,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **vs.** | ) **No. _____** |
| | ) |
| **THE TOWN OF GREENBACK, TENNESSEE,** | ) |
| | ) |
| **Defendant.** | ) |

## COMPLAINT

Come the plaintiffs, by and through counsel, and bring this action pursuant to 42 U.S.C. § 1983 for damages against the Town of Greenback, Tennessee based upon the violation of the plaintiffs' rights to due process in the zoning of their real property. In particular, the legislative body of the Town adopted a zoning ordinance which deprived the plaintiffs of their property rights without providing the plaintiffs with constitutionally required notice and an opportunity to be heard. *Schroeder v. City of New York*, 371 U.S. 208, 212-13 (1962), *All WOR Props., LLC v. Ill. Methane, LLC*, 3 F4th 912, 918 (6th Cir. 2021). Defendant's conduct is in flagrant violation of the constitutional rights of the plaintiffs under the due process clause of the Fourteenth Amendment to the United States Constitution.

## THE PARTIES

1. The plaintiff M & M Stone Farms, LLC ("Farms") is an active Tennessee limited liability company which owns real property and does business in Loudon County, Tennessee, within the corporate limits of the Town of Greenback, Tennessee.

2. The plaintiff Tri-County Crushed Stone, LLC ("Tri-County") is an active Tennessee limited liability company which leases property and does business in Loudon County, Tennessee, within the corporate limits of the Town of Greenback, Tennessee. Rodney Murphy ("Murphy") is the President of Tri-County.

3. Defendant is a municipality incorporated as a Town under the Mayor and Board of Aldermen form of government under the laws of the State of Tennessee. Pursuant to state law, the Mayor and Board of Alderman are the legislative body of Defendant, with legal authority to adopt ordinances on behalf of Defendant. Pursuant to *Monell v. Department of Social* Services, 436 U.S. 658 (1978), Defendant is a person for purposes of municipal liability under 42 U.S.C. § 1983.

4. Pursuant to Fed. R. Civ. Pro. 4(j)(2)(A), Defendant may be served with process by delivering a copy of the summons and of the complaint to its chief executive officer, Mayor Dewayne Birchfield. Mayor Birchfield may be served at the administrative office of the Town of Greenback, 6889 Morganton Road, Greenback, Tennessee, or at his home, 4280 Craigs Chapel Road, Greenback, Tennessee.

## JURISDICTION AND VENUE

5. This Court has personal jurisdiction over Defendant pursuant to Fed. R. Civ. Pro. 4(k) because the Town was established under Tennessee law and because it exists and operates within the boundaries of the State of Tennessee. In addition, the unconstitutional acts of Defendant occurred within the State of Tennessee.

6. This Court has subject matter jurisdiction pursuant to its federal question jurisdiction under 28 U.S.C. § 1331. Plaintiffs' claims arise under the Constitution and laws of the United States and are brought pursuant to 42 U.S.C. § 1983.

2

7. Venue is proper in this Court pursuant to 28 U.S.C. 1391(b)(1) because Defendant resides in this judicial district.

**FACTUAL ALLEGATIONS**

8. The plaintiff M & M Stone Farms, LLC ("Stone Farms") owns certain real property (the "Property") located within the corporate limits of the Town of Greenback. The Property consists of approximately Two Hundred Thirty-Six (236) acres.

9. Stone Farms acquired the Property on January 12, 2024, from Harold W. Hutton and wife, Cheryl W. Hutton (the "Huttons"), for Two Million, Seven Hundred Fifty Thousand Dollars ($2,750,000). True and exact copies of the relevant deeds of conveyance are attached hereto as Exhibits A and B, respectively.

10. The plaintiff Tri-County Crushed Stone, LLC ("Tri-County") leases a portion of the Property from Stone Farms. The leasehold is being used for the construction and operation of a limestone quarry.

11. Prior to 1998, the Property was located outside the corporate limits of the Town of Greenback. However, on June 8, 1998, by ordinance Defendant annexed into the Town an area which encompassed all of the Property.

12. Although Defendant annexed the Property in 1998, Defendant did not adopt an ordinance to zone the Property nor did Defendant conduct a public hearing regarding any proposed zoning, as required by Tennessee law.

13. In 2021, Murphy became interested in the Property in part because of its potential use as a quarry. Murphy owns and operates Murphy Bobcat, a local company engaged in the business of land development in the middle East Tennessee area.

3

14. On March 17, 2023, Tri-County and Murphy executed a real estate purchase and sale agreement with the Huttons to purchase the Property. That agreement remained in full force and effect at all relevant times.

15. Subsequent to the execution of the purchase and sale agreement, Murphy had testing performed on a portion of the Property to determine if it contained limestone deposits in sufficient quantities to be developed as a quarry. This testing identified vast deposits of limestone, making the Property extremely valuable for the operation of a quarry.

16. News of the possible construction of a quarry spread, causing widespread confusion, misinformation, and questions among the public. As a result, Mayor Birchfield requested that Murphy attend the next regular meeting of the Board of Mayor and Aldermen (the "Board") to explain the project to the citizenry and members of the Board. Murphy agreed to attend the meeting for these purposes.

17. On April 11, 2023, Murphy attended the regular meeting of the Board, bringing with him Jimmy Milsaps, a professional with extensive experience in the regulated blasting of underground rock.

18. At the meeting, Murphy, Milsaps, and others explained the plans regarding the construction of a quarry on a portion of the Property.

19. As of the date of the meeting, Defendant had never adopted an ordinance to impose zoning on the Property even though it had been within the municipal boundaries of the Town for twenty-five (25) years.

20. Consequently, no land use ordinance of the Town prevented the construction of a quarry on the Property or the operating of a commercial business to quarry and sell limestone.

4

21. As of the date of the meeting, Mayor Birchfield and every member of the Board knew that Murphy intended to purchase the Property for the purpose of constructing a limestone quarry.

22. As of the date of the meeting, the Property was undeveloped, having been used as a farm for many years.

23. On June 25, 2023, Tri-County and Murphy entered into a lease agreement with the Huttons for a portion of the Property. The lease agreement was to permit Tri-County to begin construction of a quarry on the Property. Lease payments were made to the Huttons under the terms of the lease agreement. Upon the execution of the lease agreement, Tri-County began operating a commercial business on the lease portion of the Property.

24. Subsequent to Murphy's making his presentation to the Board and citizens on April 11, 2023, Tri-County spent approximately $250,000 on pre-purchase costs related to the development of a portion of the Property as a limestone quarry.

25. In addition, as required by federal and state law, Tri-County had its engineer prepare and submit to the Tennessee Department of Environment and Conservation ("TDEC") an application for a National Pollution Discharge Elimination System ("NPDES") permit. A requirement of the Clean Water Act, 33 U.S.C. § 1342, the receipt of an NPDES permit is a pre-requisite to begin construction of a mine or quarry in the State of Tennessee.

26. Pursuant to applicable requirements, Tri-County posted signage on the Property giving notice to the public that the company had applied for an NPDES permit for a quarry. The notice was posted on September 28, 2023, and remained up for more than the required thirty (30) days.

5

27.     After Murphy described his plans for a quarry, and particularly after the signage was posted, the Mayor and Board began receiving calls, e-mails, and petitions opposing the quarry. This opposition was based upon false, misleading, and inaccurate information about Murphy's plans and displayed a fundamental ignorance of the thorough regulatory scheme that now governs mining and quarry operations.

28.     On December 11, 2024, TDEC held a public hearing on the application of Tri-County for an NPDES permit. A number of Greenback residents attended the meeting in opposition to the quarry. In addition, the Mayor and two members of the County Commission of Loudon County spoke out against the granting of a permit.

29.     Bowing to political pressure, the Mayor and other city officials also initiated a secret process to stop the construction of a quarry. In particular, these individuals hatched a scheme to have the Property zoned M-1 (light industrial), which prohibits quarrying entirely, without providing Murphy, the Huttons, or the plaintiffs with notice of Defendant's acts.

30.     Under Tennessee law, a local government may not impose zoning on property without the matter having been first considered by the appropriate regional planning commission. Tenn. Code Ann. § 13-7-105(a). For the Town of Greenback, that body is the Loudon County Regional Planning Commission (the "Planning Commission").

31.     To avoid the risk that Murphy or the plaintiffs would become aware of the scheme to stop the quarry, the Mayor and Board of Aldermen never conducted an open meeting to discuss the preparation and filing of an ordinance with the Planning Commission to impose zoning on the Property. Instead, the Mayor and the City Recorder met privately, contacted the Town's attorney about preparation of a zoning ordinance, and requested the Town's Building Official to have the ordinance placed on the agenda of the Planning Commission agenda.

6

32. As of that date, the City Recorder had already obtained the name and address of the owners of the Property -- Wayne and Cheryl Hutton -- through a state database.

33. In addition, the City Recorder and the Mayor knew the addresses of Rodney Murphy, Tri-County, and their attorney. In fact, the records of the Secretary of State of the State of Tennessee reflected that Tri-County has its principal office at 4921 U.S. Highway 411, Maryville, Tennessee.

34. Despite having these addresses, Defendant did not notify any of these persons that an ordinance to prohibit the use of the Property as a quarry was being put on the agenda of the Planning Commission.

35. Not having been notified of this fact, no one appeared at the Planning Commission meeting on behalf of the Plaintiffs to oppose the proposed zoning of the Property.

36. On December 12, 2024, at 7:00 p.m., the Mayor and Board of Aldermen adopted Ordinance No. 23-5 on first reading at its regular monthly meeting. By its terms, Ordinance No. 23-5 imposed M-1 (light industrial) zoning on the Property.

37. On December 12, 2024, at 6:50 p.m., prior to the beginning of the Board meeting, Defendant held a public hearing on Ordinance No. 23-5 pursuant to the requirements of Tennessee law.

38. Defendant did not physically post on or near the Property any notice of the proposed M-1 zoning, the public hearing, or the Board meeting.

39. The only notice of the public hearing or the Board meeting was a publication on December 6, 2023, in *The Maryville Daily Times*. The Notice states as follows:

PUBLIC NOTICE

> The Town of Greenback Board of Mayor and Aldermen will meet in a regularly scheduled monthly meeting on Tuesday December 12, 2023, at 7:00 pm in the Greenback Community Center. There will be a Public Hearing and first reading of an ordinance to ratify, confirm and adopt the zoning map of the Town of Greenback and adopt zoning of property previously annexed into the Town.
> December 6, 2023

A true and exact copy of the Public Notice is attached hereto as Exhibit C.

40. Nothing in the Public Notice gave the Huttons, Murphy, or the plaintiffs any indication that the Property was being affected by government action.

41. Defendant did not provide the Huttons with written or oral notice of the December 12 public hearing on Ordinance No. 23-5 and did not provide the Huttons with written or oral notice of the consideration of Ordinance No. 23-5 by the Board on December 12.

42. Defendant did not provide Rodney Murphy with written or oral notice of the December 12 public hearing on Ordinance No. 23-5 and did not provide Rodney Murphy with written or oral notice of the consideration of Ordinance No. 23-5 by the Board on December 12.

43. Defendant did not provide Tri-County or its attorney with written or oral notice of the December 12 public hearing on Ordinance No. 23-5 and did not provide Tri-County or its attorney with written or oral notice of the consideration of Ordinance No. 23-5 by the Board on December 12.

44. Having not been given written or oral notice that the Property was being zoned M-1 by Defendant, no one attended the public hearing or the Board meeting on December 12, on behalf of the plaintiffs, to oppose the action.

8

45.     On January 4, 2024, the Mayor and Board of Aldermen approved Ordinance No. 23-5 on second and final reading.  A true and correct copy of Ordinance No. 23-5 is attached hereto as Exhibit D.

46.     Of the various properties zoned under Ordinance 23-5, the Property was the only one zoned M-1, Light Industrial District.

47.     Defendant did not provide the Huttons with written or oral notice of the consideration of Ordinance No. 23-5 by the Board on second reading.

48.     Defendant did not provide Rodney Murphy with written or oral notice of the consideration of Ordinance No. 23-5 by the Board on second reading.

49.     Defendant did not provide Tri-County or its attorney with written or oral notice of the consideration of Ordinance No. 23-5 by the Board on second reading.

50.     No notice of the meeting was given despite the fact that the imposition of M-1 zoning would completely prohibit the use of the Property for quarrying.

51.     Not having been given written or oral notice that the Property was being zoned M-1 on second and final reading, no one attended the Board meeting on January 4, 2024, on behalf of the plaintiffs, to oppose the action.

52.     After the adoption of Ordinance No. 23-5 on January 4, 2024, Defendant did not notify the Huttons, Murphy, Tri-County, or the plaintiffs' attorney that Ordinance No. 23-5 had been adopted on second and final reading.

53.     On January 12, 2024, Stone Farms closed on the purchase of the Property.

54.     As of January 12, 2024, the quarrying of limestone was a permitted use on the Property.

9

55. On January 24, 2024, TDEC issued an NPDES permit to Tri-County (NPDES Permit No. TN0070717). Pursuant to the terms of the permit, Tri-County is "authorized to discharge treated mine wastewater and stormwater . . . ." The permit became effective on February 1, 2024 and will expire on January 31, 2029.

56. On May 10, 2024, a copy of Ordinance No. 23-5 was published in *The Maryville Daily Times*.

57. Under Tennessee law, ordinances enacted by the legislative body under the Mayor and Alderman form of government do not become effective until published in a newspaper of general circulation in the municipality. Tenn. Code Ann. § 6-2-101.

58. Relying upon the prohibitions imposed by Ordinance 23-5, Defendant has ordered the plaintiffs to cease quarrying operations.

## CAUSE OF ACTION

### VIOLATION OF PLAINTIFFS' RIGHT TO DUE PROCESS
### UNDER THE FOURTEENTH AMENDMENT

59. Plaintiffs re-allege and incorporate by reference the factual allegations contained in paragraphs one (1) through fifty- (58) above.

60. By virtue of the deeds, leases, and contracts described above, the plaintiffs have property rights that are protected by the United States Constitution.

61. As a municipality established under state law, defendant is a "person" for purposes of 42 U.S.C. § 1983.

62. At all relevant times, Defendant was acting under color of state law.

63. Specifically, Defendant adopted Ordinance 23-5 pursuant to its authority as a municipality under state law.

64. The adoption of Ordinance 23-5 was an official legislative enactment of the Mayor and Board of Aldermen of Defendant.

65. Prior to the adoption and publication of Ordinance 23-5, the Property was not restricted by any land use ordinance adopted by Defendant. Therefore, the plaintiffs were free to construct a limestone quarry on the Property and use it for the purpose of quarrying and selling limestone rock and gravel.

66. By its terms, Ordinance 23-5 destroyed this property interest, depriving the plaintiffs of a use of its land which was otherwise lawful.

67. By failing to give the plaintiffs or their predecessors in title prior, individualized written or oral notice that the Property was to be subjected to zoning at the public hearing on December 12, 2023, and at the Board meetings on December 12, 2023, and January 4, 2024, Defendant violated the rights of the plaintiffs under the due process clause of the Fourteenth Amendment to the United States Constitution.

68. Defendant knew or could have easily ascertained the addresses of Harold and Cheryl Hutton, the plaintiffs, Rodney Murphy, and the attorney for the plaintiffs.

69. Nevertheless, Defendant did not mail notice or in any way provide actual notice of the public hearing and the meetings to these individuals.

70. Accordingly, Defendant did not employ a procedure that was reasonably calculated under all circumstances to notify the plaintiffs or their predecessors in title of the proposed zoning in order to give them an opportunity to present their objections. *Schroeder,* 371 U.S. at 212-13, *All WOR Props., LLC*, 3 F4th at 918.

71. As a result of the adoption and enforcement of Ordinance 23-5, the plaintiffs have suffered damages and will suffer damages in the future. In addition to the costs incurred by the

11

plaintiffs in purchasing the Property and in testing, planning, and construction, the plaintiffs stand to lose millions of dollars in lost profits.

## PRAYER FOR RELIEF

**WHEREFORE,** the plaintiffs request:

a)      That the Clerk issue a Summons to the Town of Greenback, Tennessee requiring it to answer the Complaint as required by law;

b)      That the Court award a judgment against the Defendant in the amount of Two Million, Two Hundred Fifty Thousand Dollars ($2,250,000) or such amount as the proof may show for Defendant's violation of the plaintiffs' rights to due process under the Fourteenth Amendment to the United States Constitution;

c)      That the Court award the plaintiffs their reasonable attorney fees and expert fees pursuant to 42 U.S.C. § 1988;

d)      That the Court award the plaintiffs all discretionary costs permitted by law;

e)      That the Court award the plaintiffs post-judgment interest on all money judgments pursuant to 28 U.S.C. § 1961; and

f)      That the Court grant such other and further relief to which the plaintiffs may be entitled.

Respectfully submitted,

/s/ Michael S. Kelley
Michael S. Kelley (BPR No. 014378)
Jeffrey M. Cranford (BPR No. 020037)
KENNERLY, MONTGOMERY & FINLEY, P.C
Fourth Floor, Bank of America Building
550 Main Street
Knoxville, Tennessee 37901
(865) 546-7311
*Attorneys for Plaintiffs*